AO 106 (Rev. 04/10) Application for a Search Warrant

EG

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of <br> *(Briefly describe the property to be searched* <br> *or identify the person by name and address)* <br> **BLACK IPHONE, CURRENTLY LOCATED AT THE ATF COLUMBUS VAULT UNDER PROPERTY NUMBER 773040-21-0028-002** | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No.  2:22-mj-264 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A INCORPORATED HEREIN BY REFERENCE

located in the _____Southern_____ District of _____Ohio_____ , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B INCORPORATED HEREIN BY REFERENCE

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC Section 922(g)(1) | Felon in possession of a firearm |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT INCORPORATED HEREIN BY REFERENCE

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Samuel Chappell, TFO ATF

*Printed name and title*

Sworn to before me and signed in my presence.

Date:  April 13, 2022

City and state: Columbus, Ohio

Kimberly A. Jolson
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO EASTERN DIVISION

IN THE MATTER OF THE SEARCH OF A
BLACK IPHONE, CURRENTLY LOCATED
AT THE ATF COLUMBUS VAULT UNDER
PROPERTY NUMBER 773040-21-0028-002

Case No. _2:22-mj-264_____

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION UNDER RULE 41 FOR A
## WARRANT TO SEARCH AND SEIZE

I, Samuel Chappell being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a search warrant authorizing the examination of property—an

electronic device—which is currently in law enforcement possession, and the extraction from

that property of electronically stored information described in Attachment B.

2.      I am a Columbus Ohio Police Office (Columbus Police Department) currently

assigned as a Task Force Officer (TFO) with the Bureau of Alcohol Tobacco, Firearms, and

Explosive (ATF). The Columbus Division of Police has employed me since 2007.  I have been

assigned as a TFO 2017. My responsibilities as a Task Force Officer include the investigation of

criminal firearms possession and use, violent criminal street gangs, narcotics traffickers, firearm

traffickers, and money laundering related to the previously mentioned offenses. I have

participated in controlled purchases of controlled substances and firearms utilizing confidential

sources and undercover law enforcement agents and officers.  I have prepared affidavits

submitted in federal court in support of applications for criminal complaints, search warrants,

tracking warrants, and/or arrest warrants. I have participated in numerous investigations involving a variety of investigative techniques, including physical and electronic surveillance methods; controlled purchases; the analysis of a wide variety of records and data, including pen register and trap and trace data as well as cell phone GPS/E-911 data; and the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage, and importation of narcotics and firearms.

3.      Specifically, to this search warrant through training and experience I know that individuals who possess firearms and ammunition frequently utilize cell phones to take photographs and videos of themselves in possession of firearms and ammunition. These photographs and videos are often posted to social media using a cell phone. These same individuals also utilize cellphones, to include calls, texts, and social media applications, to arrange the purchase and sale of firearm, ammunition, and/or accessories.

4.      I also know, from my training and experience that "cell phones and the services they provide are 'such a pervasive and insistent part of daily life' that carrying one is indispensable to participation in modern society." Carpenter v. United States, 138 S. Ct. 2206, 2220 (citing Riley v. California, 573 U. S., at ___, 134 S. Ct. 2473, 2484 (2014))

5.      By virtue of my experience and training, I am familiar with cellular telephone search warrants. Throughout this affidavit, reference to "investigators" specifically refers to criminal investigators.

6.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

2

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

7.      The property to be searched is a black iPhone, hereinafter the "Device." The Device is currently located at the ATF Columbus Vault under property number 773040-21-0028-002.

8.      The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## APPLICABLE STATUTES AND DEFINITIONS

9.      Title 18, United States Code, Section 922(g)(1) makes it a federal crime for any person to knowingly possess a firearm, after previously being convicted of a crime punishable by imprisonment for a term exceeding one year, and the firearm was in and affecting interstate and foreign commerce, in violation of Title 18, United States Code, 922(g)(1).

## CRIMINAL HISTORY KADEEM SMITH

10.      SMITH was prohibited from possession of a firearm on October 23, 2020, based upon having been previously convicted of the following crime punishable by a term of imprisonment exceeding one year:

    a.  On or about May 4, 2015, SMITH plead guilty in the Franklin County Court of Common Pleas, Case Number 14CR004785 for vandalism and abduction.

    b.  On or about November 18, 2015, SMITH plead guilty in the Franklin County Court of Common Pleas, Case Number 15CR003518 for weapons under disability.

3

## PROBABLE CAUSE

11.     On or about October 23, 2020, 1:35 P.M. uniformed Columbus Division of Police

officers were dispatched to 1246 Minnesota Avenue Columbus Ohio on a report of a male with a

warrant for his arrest. Officers were told that the male had a gun. Officers were given his

description and told his name was Kadeem SMITH. The male was described as having light skin

and wearing a blue hoody.

12.     A plain clothes CPD officer arrived in the area prior to uniformed patrol officers'

arrival. The plain clothed officer observed the male described by the caller. The plain clothed

officer identified the male as SMITH. The officer observed the mail standing next to a dark

colored SUV. The officer further observed SMITH lifting his sweatshirt to show his waist band

when two unknown males walked by the vehicle. SMITH was observed grabbing his waist

several times. Due to these behaviors and the information in the original call the officer believed

SMITH to be armed. A female later identified as Natasha MCGRAW was observed near the

vehicle.

13.     Uniformed officers responding to the area observed a SMITH. They parked their

cruiser near the SUV later identified as a Chevrolet Equinox bearing Ohio license plate J900584.

SMITH got into the driver's seat of a Chevrolet Equinox and fled the area. Natasha MCGRAW

was in the passenger seat of the Equinox when it fled from officers. The vehicle stopped a short

distance away and SMITH fled on foot.

4

14. SMITH ran through the yard of 1340 Minnesota Avenue. SMITH took off the blue sweatshirt which officers located in the alley behind 1340 Minnesota Avenue. Officers were not able to catch SMITH.

15. During an impound of the vehicle that SMITH was driving officers found a loaded Beretta Nano 9mm pistol bearing serial NU165330 in the center console. Officers spoke with MCGRAW who was inside the vehicle when SMITH drove away. MCGRAW denied having any knowledge of the firearm located in the vehicle. Officers also recovered a black iPhone that was turned into the CPD Property Room.

16. On or about October 23, 2020, at 9:11 P.M. Columbus Police Dispatch received a call from Nikita Cummings. Cummings wanted to report her vehicle Chevrolet Equinox bearing Ohio license plate J900584 stolen. Cummings stated that he was gone from her residence for a few days. When she returned on or about October 22, 2020, she noticed her keys were missing. Her vehicle was still where it was last parked. After arriving home from work on October 23, 2020, she had noticed her vehicle missing. Which prompted her to contact police. Cummings stated she had left her keys inside of her home. No signs of forced entry were found by the responding officer.

17. Investigators later learned that the firearm recovered from the Chevrolet Equinox on or about October 23, 2020, was originally purchased by Cummings one hundred and eighty-four (184) days prior. This firearm was never reported stolen or mentioned by Cummings when interviewed by officers about her stolen vehicle. Cummings gave (614) 615-5768 as her phone number.

18. On or about December 12, 2020, SMITH was arrested on an Ohio Adult Parole Authority warrant for a parole violation. The violation stemmed from the incident on October 23, 2020. SMITH was incarcerated at the Franklin County Jail (FCJ). A search of jail records shows that on or about December 14, 2020, Cummings visited SMITH at the jail. Her relationship was listed as girlfriend.

19. Investigators learned that on or about January 11, 2021, SMITH was transferred from the Franklin County Jail to the Lorain Correction Institution to serve his time for his parole violation. On or about March 26, 2021, a DNA search warrant from the United States Court for the Northern District of Ohio Case Number 1:21MJ9127 was executed. Investigators obtained a sample of Deoxyribonucleic Acid (DNA) from SMITH to compare to any potential DNA recovered from the firearm recovered on October 23, 2020.

20. Investigators obtained jail calls made from Lorain Correction Institution by SMITH. On or about March 26, 2021, at 8:14 A.M. SMITH makes a call to an unknown female at (614) 955-0453. SMITH tells the woman that the Feds just swabbed him. SMITH has the women make a three-way call to his mother. SMITH tells his mother that he was just swabbed. SMITH and the woman discuss the search warrant and why the government wants his DNA. SMITH tells them "the only thing I could be thing about is that gun".

21. Investigators found multiple calls made by SMITH to (614) 615-5768. (614) 615-5768 this number is believed to belong to Cummings On or about March 26, 2021, at 8:54 A.M. SMITH calls (614) 615-5768 this number is believed to belong to Cummings. SMITH tells Cumming that the feds came and swabbed him. SMITH and Cummings then discuss the search warrant and what it could mean.

6

22.     On or about March 26, 2021, at 9:03 SMITH makes a call to an unknown female at 614) 955-0453. The woman makes a three-way call to SMITH's mother. During an argument about the warrant SMITH's mother yells "you know why you inside is because that black bitch said you stole that gun". His mother then hangs up the phone.

23.     Investigators believe that the contents of the phone recovered on October 23, 2020, will show if the phone was owned and or used by SMITH. Investigators also believe that the contents of the phone could show messages and or other communications between SMITH and Cummings discussing the possession of the firearm by SMITH.

24.     The Device is currently in the lawful possession of the ATF.  It came into the ATF's possession in the following way: custody of the phone was transferred to the ATF from the Columbus Police Property Room on or about March 18, 2022.  Therefore, while the ATF might already have all necessary authority to examine the Device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

25.     The Device is currently in storage at the ATF Columbus Evidence Vault.  In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the Columbus Division of Police.

## TECHNICAL TERMS

26.     Based on my training and experience, I use the following technical terms to convey the following meanings:

7

a. Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.

8

This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected

9

to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.   PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.   Tablet:  A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen.  Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise.  Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions.  Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

10

g. Pager: A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

h. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

i. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

27. Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at https://www.apple.com/iphone. I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In

11

my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

28.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

29.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

> a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file)..

> b.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

> c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw

12

conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

30. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

31. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve

13

the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the

Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

32.     I submit that this affidavit supports probable cause for a search warrant

authorizing the examination of the Device described in Attachment A to seek the items described

in Attachment B.

Respectfully submitted,

Samuel Chappell
Task Force Officer
ATF

Subscribed and sworn to before me
on April 13, 2022:

Kimberly A. Jolson
United States Magistrate Judge

14

## ATTACHMENT A

The property to be searched is a black iPhone, hereinafter the "Device." The Device is currently located at the ATF Columbus Vault under property number 773040-21-0028-002.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the Device described in Attachment A that relate to violations of Title 18, United States Code, 922(g)(1) and Title 18, United States Code Section 924(a)(1)(A) and involve Kadeem SMITH, including:

        a.   any information related to the purchase, possession, usage or ownership of firearms.

        b.   Messages, calls, and other contacts between the device and Cummings.

2.      Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.